W. A. Davis v. Commissioner.
W. Davis v. Commissioner
Docket No. 29594.
United States Tax Court
1953 Tax Ct. Memo LEXIS 89; 12 T.C.M. (CCH) 1167; T.C.M. (RIA) 53333; October 20, 1953
*89 The Commissioner has determined that petitioner is liable as transferee for the income taxes and penalties of Anniston Better Built Homes, Inc., to the extent of $9,063.63. Petitioner by proper assignments of error denies that he is liable in any amount as transferee for Anniston's tax liabilities and penalties. The facts are all stipulated. All that the stipulation shows upon the subject of transfers to petitioner is: "The respondent determined that distributions had been made by Anniston Better Built Homes, Inc. to * * * W. A. Davis, $9,063.63." In view of the fact that petitioner has specifically denied that he received any such distribution of assets from the corporate taxpayer, it was incumbent upon the Commissioner to come forward with proof that petitioner did in fact receive such a distribution of assets from Anniston and that this distribution was either made while Anniston was insolvent or that the distribution itself resulted in the insolvency of Anniston. This the Commissioner has failed to do. Held, the Commissioner has not borne his burden of proof to show that petitioner is liable in equity as a transferee for the taxes and penalties due by Anniston. Lon Chandler Watson, Jr., Esq., P.O. Box 22, Anniston, Ala., for the petitioner. D. Louis Bergeron, Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion The Commissioner has determined that petitioner is liable as transferee of the assets of Anniston Better Built Homes, Inc. The deficiencies of the transferor for which the Commissioner seeks to hold petitioner liable as transferee are as follows: [SEE TABLE IN ORIGINAL] In his deficiency notice, the Commissioner states: "You are advised that the determination of the income tax, declared value excess-profits tax, and excess-profits tax liability of Anniston Better Built Homes, Inc., * * * for the years ended June 30, 1943, June 30, 1944, June 30, 1945, and for the taxable year July 1, 1945 to January 16, 1946, discloses *91 a deficiency of $4,763.45 in income tax and $947.78 in penalty, a deficiency of $2,247.19 in declared value excess-profits tax and $575.31 in penalty, a deficiency of $1,971.45 in excess-profits tax and $591.44 in penalty, * * * $7,336.51 of the amount of the deficiencies and $1,727.12 of the amount of the penalties, plus interest as provided by law, constituting your liability as a transferee of assets of Anniston Better Built Homes, Inc., * * * will be assessed against you." The deficiency notice further states: "I. Inasmuch as the value of assets received by you amounted to $9,063.63, your liability as transferee is limited to that amount. "II. The records of this office indicate that Anniston Better Built Homes, Inc., formerly known as Decatur Better Built Homes, Inc., has been dissolved and that assets were transferred to you over the period beginning February 16, 1945 and ending January 16, 1946." Petitioner's assignments of error do not contest the liability of Anniston Better Built Homes, Inc., for the deficiencies which have been determined against it. Petitioner does contest by appropriate assignments of error that he is liable as transferee for any part of the taxes. *92 The facts were all stipulated, together with some exhibits attached thereto. It is petitioner's contention that these facts as stipulated fail to show that petitioner is liable, either at law or in equity, for the taxes of Anniston Better Built Homes, Inc. Respondent's contention is that these facts as stipulated are sufficient to show transferee liability of petitioner to the extent of the value of the assets which respondent alleges that he received. Findings of Fact The petitioner is a resident of Anniston, Alabama, and is, and for the periods involved, was engaged in the real estate business. The corporate taxpayer, Anniston Better Built Homes, Inc., sometimes hereafter referred to as Anniston, was organized under the laws of the State of Alabama on July 1, 1942, and filed corporation income and declared value excess-profits tax returns for the periods involved, except that no such returns were filed for the fiscal year ended June 30, 1945 or the period ended January 16, 1946. During the periods involved, the alleged transferor corporation was engaged in the construction, rentals, and sales of low-cost defense houses as its principal business. On February 16, 1945, the *93 three stockholders of the corporate taxpayer entered into a contract with the petitioner. The contract is made a part of the stipulation of facts and may be summarized as follows: The contract provided that the stockholders would sell their stock to the petitioner and the petitioner would buy same at a price of $7,500, with the stock being endorsed in blank and held in escrow pending the payment of the purchase price therefor. The purchase price was to be paid $1,000 in cash and the balance at the rate of $1,000 each month beginning one month after date of the contract, with the last payment being in the amount of $1,500 due six months from the date of the contract, with interest on the unpaid balance of the purchase price at six per cent per annum from the date of the contract. Under this contract, the petitioner was given the right to sell the real property of the corporation consisting of houses situated at Anniston at the rate of two houses during any month in which the petitioner had made the payments on the contract in accordance with its terms, provided that the petitioner might sell additional houses in any month by making an additional payment on the contract in the amount *94 of $500 for each house sold. The president of the corporation, J. B. Owens, who was also the principal stockholder, was to execute the deeds for such houses as were sold by petitioner. Under the contract the real property owned by the corporation and situated at or near Decatur, Alabama, was to be conveyed by the corporation to J. B. Owens so as to divest title out of the corporation and into J. B. Owens. The contract also provided that J. B. Owens would be entitled to a utility deposit at Anniston, Alabama, in the sum of approximately $1,800, which had been made by the corporation with the Alabama Power Company. The contract further provided that certain accounts receivable due the corporation were to b come the property of J. B. Owens. The selling stockholders warranted to the petitioner in the contract that all the indebtedness due and outstanding by the corporation were mortgages on the real property. The contract further provided that J. B. Owens would assign to petitioner all of his interest in a hotel located at Jacksonville, Alabama, together with any indebtedness due J. B. Owens by the hotel, the value of both being placed at $1,500. The contract also provided that the *95 selling stockholders would have the right to cancel the contract in the event of default on the part of petitioner in the payments provided by the contract. Petitioner made payments on the contract in the amount of $7,664.83 over a period extending from February 16, 1945 through January 16, 1946, the payments in excess of $7,500 being interest. On or about September 20, 1948, a firm of certified public accountants made an audit of the corporation's books and records. After an examination of the books and records and the audit, the internal revenue agent determined the previously-referred-to tax deficiencies owed by the corporation. On April 19, 1950, the respondent mailed to petitioner a statutory notice of deficiency which stated that taxes due from the corporation in the sum of $9,063.63 would be assessed against petitioner as transferee of the corporation. On the same date a similar notice was sent to J. B. Owens but no petition was filed by him in the Tax Court with regard to the proposed assessment against him as transferee. The respondent determined that the corporate taxpayer had distributed to J. B. Owens $20,773.81 and to W. A. Davis, the petitioner, $9,063.63. *96 The corporation was dissolved on January 16, 1946, and on the date of dissolution was without assets or funds with which to pay its tax liability. Any of the facts which are embodied in the stipulation of facts and are not incorporated in the foregoing findings of fact are hereby incorporated by reference. Opinion BLACK, Judge: There is no issue involved in this proceeding concerning the tax liability of the transferor, Anniston Better Built Homes, Inc., and that it remains unpaid. Petitioner does, however, emphatically contest his liability either at law or in equity for any of the taxes and penalties due by the corporate taxpayer. The applicable statute is section 311 of the Code which reads as follows Collection. - The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, collected, and paid in the same manner and subject to the same provisions and limitations as in the case of a deficiency in a tax imposed by this chapter (including the provisions in case of delinquency in payment after notice and demand, the provisions authorizing distraint and proceedings in courts for collection, and the provisions prohibiting claims *97 and suits for refunds): "(1) Transferees. - The liability, at law or in equity, of a transferee of property of a taxpayer, in respect of the tax (in-including interest, additional amounts, and additions to the tax provided by law) imposed upon the taxpayer by this chapter. * * *
"Any such liability may be either as to the amount of tax shown on the return or as to any deficiency in tax." It is clear that petitioner is not liable as a transferee at law of Anniston. Transferee liability at law is incurred when a purchaser or transferee of assets agrees to pay the liabilities of the transferor, including taxes, or when there is a merger under state law of two or more corporations and the surviving corporation is made liable by state statute for all of the liabilities including taxes of the corporation which ceases to exist by reason of the merger. No such situation exists in the instant case and we do not understand respondent to contend that petitioner is liable at law as a transferee. Plainly he is not so liable. Is petitioner liable in equity as a transferee under the facts which have been stipulated. We think we stated the correct rule governing transferee liability in *98 equity in Samuel Keller, 21 B.T.A. 84, affd. 59 Fed. (2d) 499, as follows: "Now it must be admitted at the outset that petitioners are transferees of assets of the corporation to the extent of a value of at least $30,000. The nature and detail of these assets are set out in our findings of fact. But not every transferee of capital assets of a corporation is liable at law or in equity to the creditors of a corporation under the trust-fund doctrine. This trust can only be impressed upon assets of the corporation which are distributed on dissolution, or during the insolvency of the corporation, or when such distribution creates a condition of insolvency. United States v. Armstrong, 26 Fed. (2d) 227. If a corporation transfers a part of its assets to stockholders while it is solvent and is not made insolvent by the transfer, there is no liability either at law or in equity on the part of the stockholders who receive such distribution, even though the corporation subsequently becomes insolvent and is no longer able to pay its debts. * * *" See also Ruth Halle Rowen, 18 T.C. 875, third issue. As we have already stated, the facts have *99 all been stipulated; there is no other evidence. The burden of proof to show that petitioner is liable in equity as a transferee is upon respondent and no authority need be cited on that point for it is not in dispute. First of all, respondent must prove that certain of the assets belonging to Anniston aggregating $9,063.63 in value were transferred to petitioner. We have no such proof in the record to that effect. All that the stipulation of facts says on this subject is as follows: "The respondent determined that distributions had been made by Anniston Better Built Homes, Inc. to the two above-named individuals as follows: "J. B. Owens
$20,773.81
W. A. Davis
9,063.63"
It is true, as the stipulation of facts says, that respondent, in his determination of the deficiency against petitioner as transferee, did determine petitioner had received from Anniston transfers of assets which had a value of $9,063.63, but mere determination by respondent in his deficiency notice that transfers were made to petitioner is no proof that they were in fact made, especially where petitioner has denied that he received any such transfers. Respondent in his answer filed in this *100 proceeding September 11, 1950, affirmatively alleged petitioner's liability as transferee in the following language: "1. On or about January 16, 1946, Anniston Better Built Homes, Inc., formerly Decatur Better Built Homes, Inc., was dissolved and its charter surrendered by W. A. Davis, the sole stockholder. "2. All of the assets of Anniston Better Built Homes, Inc., formerly Decatur Better Built Homes, Inc., were transferred to W. A. Davis, petitioner, without cost to the transferee. "3. The deficiencies in income, declared value excess-profits, and excess profits tax of Anniston Better Built Homes, Inc., formerly Decatur Better Built Homes, Inc., plus penalties, totaling $11,096.62 determined by the Commissioner for the fiscal years ended June 30, 1943, 1944, 1945 and January 16, 1946, remain unpaid. A detailed statement of such taxes and penalties is found on the first page of the 'Statement' attached to the notice of liability sent to petitioner herein, a copy of which is attached as the third page of Exhibit A to the petition. "4. By reason of the transfer of the assets of the corporation to W. A. Davis, respondent was deprived by means of proceeding against Anniston Better *101 Built Homes, Inc., formerly Decatur Better Built Homes, Inc., for the collection of the aforesaid deficiencies and penalties of $11,096.62, plus interest thereon as provided by law. "5. The assets so transferred to W. A. Davis totaled $9,063.63. "6. By reason of the aforesaid transfer of property and the receipt thereof by W. A. Davis, he became liable as a transferee within the meaning of section 311 of the Internal Revenue Code, and as such transferee is liable for the payment of the aforesaid deficiencies and penalties, to the extent of $9,063.63, plus interest thereon as provided by law." To these affirmative allegations of transferee liability of petitioner made by respondent in his answer, petitioner filed a reply in which he stated as follows: "1. Petitioner admits that on or about January 16, 1946, Anniston Better Built Homes, Inc., formerly Decatur Better Built Homes, Inc., was dissolved and its charter surrendered but that this was done only nominally by petitioner and that petitioner was only nominally its sole stockholder. "2. Petitioner denies allegations contained in paragraph 2 of that part of respondent's answer designated, 'FURTHER *102 ANSWER AND AFFIRMATIVE ISSUE'. "3. Petitioner is without knowledge as to the matters averred in paragraph 3 of that part of respondent's answer designated, 'FURTHER ANSWER AND AFFIRMATIVE ISSUE', and, therefore, neither admits nor denies the material allegations of said paragraph 3. "4. Petitioner denies paragraph 4 of that part of respondent's answer designated, 'FURTHER ANSWER AND AFFIRMATIVE ISSUE'. "5. Petitioner denies paragraph 5 of that part of respondent's answer designated, 'FURTHER ANSWER AND AFFIRMATIVE ISSUE'. 6. Petitioner denies paragraph 6 of that part of respondent's answer designated, 'FURTHER ANSWER AND AFFIRMATIVE ISSUE'." Therefore, it will be seen that the truth and correctness of respondent's determination of petitioner's liability as a transferee and affirmative allegations with reference thereto were placed in issue by the pleadings and we do not consider that respondent has made proof of the matter in issue, namely, that Anniston transferred $9,063.63 of its assets to petitioner. As we have already pointed out all that is stipulated on that subject is: The respondent determined that distributions had been made by Anniston Better Built Homes, Inc. *103 to the two above-named individuals as follows: J. B. Owens
$20,773.81
W. A. Davis
9,063.63
A determination of the sort described above might well be sufficient if not denied by petitioner but it has been in fact denied specifically. Therefore, we think it was incumbent upon respondent to come forward with evidence that petitioner did in fact receive assets by transfer from Anniston of the value of $9,063.63, and that such transfers were either made while Anniston was insolvent or else served to make Anniston insolvent. Samuel Keller, supra.These things, we think, respondent has failed to prove and in so failing he has failed to discharge his burden of proof to show that petitioner is liable in equity as a transferee of Anniston. We so hold. Decision will be entered for the petitioner.